## COURSON v. COURSON.
No. C-64-1688.

Circuit Court, Broward County.
March 18, 1965.

John W. Douglass, Fort Lauderdale and Mrs. Virginia Anne Church of O'Brien, Mixon, Church & Bonner, Tampa, for plaintiff.

Hugh T. Maloney, Fort Lauderdale, for defendant.

JOSE A. GONZALEZ, Jr., Circuit Judge.

This cause came on for final hearing pursuant to the order of this court on February 24, 1965.

Plaintiff-wife sues for divorce on grounds of extreme cruelty and prays inter alia, for an absolute divorce, alimony, permanent custody of the minor children, and child support. Defendant-husband counterclaims for divorce on similar grounds and the further ground of violent and ungovernable temper. Defendant prays, inter alia, for an absolute divorce, and permanent custody of the minor children.

The pleadings and proofs disclose that plaintiff and defendant were married in Toledo, Ohio on August 8, 1955. They lived in Ohio until the fall of 1959 when they moved to Broward County, Florida. They have resided in Florida ever since. Plaintiff is 35 years of age and has worked as a receptionist and television model. Defendant is 52. For the majority of his adult life he has been engaged in the practice of law both in Ohio and Florida.

Three children have been born of this union, to-wit: Clinton, Jr., age 8; Christopher Michael, age 6; and Mary Ellen, age 4.

It is over the custody of these children that the majority of the battles in this tragic and bitterly contested litigation have raged.

The court at final hearing heard testimony from more than twenty witnesses over a period of three days. In addition to the lay witnesses called, expert testimony was received from three psychiatrists and two psychologists who testified relative to the issue of the mental status and condition of the parties and their suitability to have the permanent custody of the minor children.

The court has carefully considered the testimony of all the witnesses and has particularly considered the expert testimony offered by the parties as it bears upon the issue of custody herein.

It appears from the evidence that this marriage failed to prove a happy one almost from the outset. Each of the parties expected and demanded a standard of marital performance from the other that he or she was unable or unwilling to meet.

Whether the failure of the parties to adjust their marital differences over a period of years was due to a conscious indifference on the part of each to the needs of the other, or whether it was the product of their respective emotional weaknesses is immaterial. In either event, the court is convinced beyond peradventure that further cohabitation between plaintiff and defendant would be intolerable and unsafe to their health as well as the emotional well being of their children.

Both of the parties having prayed for divorce, the court finds that it must balance the equities on the basis of the conflicting testimony presented to determine what disposition should be made of the cause.

After carefully considering the testimony, and gauging its weight by accepted legal standards the court finds as follows —

1.  That the court has jurisdiction of the parties and of the subject matter of this suit.

2.  That the equities are with the defendant-counterclaimant and against the plaintiff-counterdefendant.

3.  That the plaintiff-counterdefendant has been guilty of extreme cruelty to the defendant-counterclaimant.

4.  That the defendant-counterclaimant is entitled to an absolute decree of divorce of and from the plaintiff-counterdefendant.

Having determined these issues, we must next consider the question of whether or not under the facts presented there are such special equities present as would justify this court in awarding alimony to the plaintiff after having found that the equities of the cause are against said plaintiff.

The court is convinced that it is justified in so doing.

The court notes that the proofs at final hearing disclose that the defendant has spent $16,000 to $18,000 yearly for the support of his family; that he is financially secure and has until most recent years enjoyed a great measure of financial success; that he is well able to provide for his family; that he presently has substantial personal assets; that plaintiff at the time of her marriage was a

receptionist who could type 50 to 60 words per minute; that she married a man 13 years her senior; that she has not been employed since the time of her marriage; that she has only a 12th grade education and has no special skills such as would enable her to earn her living; and that for the past nine years she has enjoyed a standard of living well above average as provided by her husband.

From the foregoing, as well as other matters of record considered, the court believes that there are special equities present such as require this court to award alimony to the plaintiff-wife. In view of plaintiff's extremely limited capital and her even more limited skills and resources for earning her living, the court is convinced that denying her alimony at this time would result in casting this loyal though imperfect wife of nine years, who has borne the defendant three children, upon the tender mercies of her family or friends. This the court cannot either countenance or permit.

Accordingly, the court finds —

5. That there are special equities in favor of the plaintiff to justify awarding her alimony in this cause.

6. That title to the real property containing the home of the parties is solely in the defendant-counterclaimant.

Finally, the court must reluctantly consider the question of the custody of the minor children of the parties hereto.

At the outset, the court must comment on certain facets of this issue of which it is absolutely convinced.

Although testimony was adduced at the final hearing which attempted to prove that plaintiff was morally unfit to have the custody of the minor children of the parties, the court specifically finds that this allegation is without foundation. Were this the only issue to be decided with respect to the issue of custody this court's task would be easy indeed.

The court specifically finds that plaintiff is *not* morally unfit to have custody.

The issue, unfortunately, is not so simple.

Voluminous testimony was presented at the final hearing by both expert and lay witnesses bearing upon the question of which of the parents was best suited in the light of their personal and peculiar emotional psychiatric make-ups to be entrusted with the future care of the children.

In arriving at its decision, this court has been guided solely by what it feels is in the best interest of the minor children and what will best serve their immediate and future welfare. Further, the court has not been unmindful of the effects of this court's decision on the children.

Having said this, it should further be pointed out that the court has carefully considered the fact that based upon all of the expert testimony adduced at trial it appears that plaintiff and defendant are both less than perfectly equipped to discharge their respective roles as parents.

Nevertheless, the court does not believe that the welfare of these children would be served by placing them in the custody of someone other than one of their parents, and accordingly, must choose between them, believing that neither is totally incapacitated from discharging his or her parental duties.

Based upon the proofs presented, the court finds as follows —

7. That defendant is a fit and proper person to have the permanent custody of the minor children of the parties hereto and that the defendant has taken the steps necessary to provide proper facilities for the care and maintenance of the children.

8. That the welfare and best interest of the children of the parties would be served by placing them in the permanent care, custody and control of the defendant.

9. That plaintiff is entitled to full and reasonable rights of visitation with the children, and that such visitation would be in the best interest of the children — and the court encourages plaintiff to maintain a meaningful association with them.

In arriving at these findings the court has not been unaware of the prior holdings of the Supreme Court of this state that children of tender years should be put in the care of their mothers except where the mother is morally unfit. See e.g., Teel v. Sapp (1951) Fla., 53 So.2d 635.

This court does not believe that the law of this state contemplates that this is the only standard to be applied. The welfare of the children being the paramount consideration, this court believes that where the evidence shows that the mother, by reason of her emotional idiosyncracies engages in a pattern of behavior which proves harmful or may reasonably tend to prove harmful to the normal development and normal growth of her children, a court of chancery is justified in awarding the custody of said children to another.

The court has considered the evidence that it would be in the best interests of plaintiff and defendant as well as the children for plaintiff to be relieved of the everyday planning, care, and control of the children although permitted liberal visitation with them.

Further, the court has also considered the question of dividing custody, and of splitting the children between the parents, and finds that divided custody is neither justifiable nor desirable, and that splitting these brothers and sister from each other would not be in their best interest.

The court has been strongly persuaded in its decision by the fact that defendant-counterclaimant is presently actively seeking professional treatment, and that he has undertaken to secure the services of a qualified woman to care for the children.

The court is further convinced, from observing and listening to the witnesses, that awarding permanent custody of the children to the plaintiff — in the light of her present emotional condition — would not be in the best interest of the children. Hopefully, we can expect the plaintiff to seek help.

Any case involving custody of children is a difficult one, involving as it does not only the personal feelings of the parties, but also the future welfare of their children. However painful it may be to separate this mother from her children, the court should not permit sympathy or sentimentality to divert it from the performance of what it deems to be its duty as it is given to us to see that duty.

The minor wards of this court being the paramount consideration, any doubt as to the best course to follow must be resolved in favor of the safest course for the good of the children — to the extent that mortal men can discern that course.

All of the foregoing considered, it is accordingly ordered, adjudged and decreed —

1.   That defendant, Clinton S. Courson, be and he is hereby granted a divorce, a vinculo matrimonii, of and form the plaintiff, Mary Courson.

2.   That the defendant, Clinton S. Courson, be and he is hereby granted the exclusive care, custody and control of the minor children of the parties to-wit: Clinton Courson, Jr., age 8 years, Christopher Michael Courson, age 6 years, and Mary Ellen Courson, age 4 years, subject to the right of the plaintiff, Mary Courson, to visit with said children at all reasonable times.

3. That neither party shall remove any of the children from the jurisdiction of this court without the written consent of the other party or by leave of this court first had.

4. That defendant, Clinton S. Courson, shall pay to the plaintiff, Mary Courson, the sum of $350 per month as alimony, until the death of either of the parties or until she remarries, with the first of such payments to be paid on April 1, 1965, and continuing on the first day of each and every month thereafter.

5. That the custody provisions of this decree shall be effective April 1, 1965, and plaintiff shall deliver custody of the minor children of the parties to the defendant by not later than April 1, 1965; and plaintiff shall further remove herself from the home of the parties simultaneously with the surrender of such custody, it being the court's intent to make the home of the parties available as a home for the children.

6. That this court retains jurisdiction of this cause and of the children hereto for making such other and further orders as may be necessary relating to the custody of the minor children, and for the further purpose of modifying or enforcing the terms of this final decree.

7. All prayers for relief not herein specifically granted are denied.